# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BUTTE DIVISION

| | |
|---|---|
| AMERICAN MODERN HOME INSURANCE COMPANY, an Ohio corporation,<br><br>　　　　　　Plaintiff,<br><br>　vs.<br><br>DOLAN DUFFY, a citizen of Montana,<br><br>　　　　　　Defendant. | CV-13-01-BU-DLC-CSO<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

Plaintiff American Modern Home Insurance Company ("American") seeks a judicial declaration that it has paid all applicable insurance coverage limits to Defendant Dolan Duffy ("Duffy"), after Duffy sustained a dog bite injury at the residence of American's insured. *ECF 1.*[1]

Now pending is American's Motion for Summary Judgment. *ECF 17.* Having considered the parties' arguments and submissions, the Court recommends that American's motion be granted.

---

[1] "ECF" refers to the document as numbered in the Court's Electronic Case Files. *See The Bluebook, A Uniform System of Citation,* § 10.8.3.

I.  **BACKGROUND**

In June 2011, Duffy sustained bodily injuries after he was bitten by a dog at the residence of Debbie Paige and her son, Travis Paige, in Butte, Montana. *ECF 18 at ¶¶ 4, 6, 7; ECF 23-1 at ¶¶ 4-5*. American insured the property on which Duffy was injured under Policy Number N077 032685 0045513017 25 T60 (the "Policy"). *Aff. Jeff Morgan (ECF 19) at ¶ 7*. Both Debbie and Travis were "insureds" under the Policy, and the dog that bit Duffy was owned by them, or was in their care and custody. *ECF 18 at ¶¶ 6-8; ECF 23-1 at ¶¶ 6-8*. As indicated by the citations above, these facts are undisputed.

The Policy's declarations page states: "THIS POLICY PROVIDES ONLY THE FOLLOWING COVERAGES FOR THIS UNIT...." and then lists several items of coverage, split between two sections. Section 1 is identified as "**DWELLING PROPERTY BASIC FORM**" (*ECF 19 at 21-29*) and Section 2 is identified as "**PERSONAL LIABILITY**" (*ECF 19 at 30-36*). Section 2 includes, among others, "COVERAGE L - PERSONAL LIABILITY EA. OCC.", "COVERAGE M - MEDICAL PAYMENTS EA. PERSON" and "COVERAGE L - ANIMAL LIABILITY EA. OCC." *See Policy (ECF 19) at 4 (caps in original)*. Coverage L - Personal Liability lists a policy limit of $100,000 and a premium of $50. *Id. at 4*. Coverage L - Animal

Liability lists a policy limit of $10,000, with no stated premium. *Id*. Coverage M - Medical Payments lists a per person policy limit of $1,000, also with no stated premium. *Id*.

The Policy contains a "**SPECIAL LIMIT FOR ANIMAL LIABILITY**" endorsement, numbered 73183 02/08, found on page 5 of the Policy. *Id. at 8*. A reference to endorsement number 73183 02/08 appears on the declarations page. *See Id. at 4*. The Animal Liability endorsement provides, in its entirety:

> Your policy is amended as follows:
>
> **LIABILITY COVERAGES**
>
> **COVERAGE L – PERSONAL LIABILITY**
>
> We will not pay more than $10,000 for any claim made or suit brought against any "insured" for "bodily injury" or "property damage" caused by or contributed to by any animal owned by, or in the care or custody of any "insured". This limit is the maximum we will pay for any one "occurrence".
>
> All Definitions and Conditions of the Personal Liability Coverage Part apply. All other provisions of the policy apply.

*Id. at 8*.

Duffy has demanded that American pay his bodily injury claims against Debbie and Travis stemming from the dog bite incident. *ECF 18 at ¶ 11; ECF 23-1 at ¶ 13*. American has paid Duffy the $10,000

limit under Coverage L - Animal Liability and the $1,000 limit under Coverage M of the Policy. *ECF 18 at ¶ 12; ECF 23-1 at ¶ 14.*

## II.  PARTIES' ARGUMENTS

American argues that it is entitled to summary judgment because it has paid to Duffy the limits of all applicable insurance available under the Policy. American argues: (1) the Animal Liability endorsement clearly, conspicuously, and unambiguously limits coverage to $10,000 for bodily injury caused by an insured's animal, *Pltf's Br. (ECF 20) at 6-7*; (2) the special limit for Animal Liability does not violate public policy because this coverage limitation only applies in a very specific manner and the full amount of coverage is available in other contexts, *id. at 7-8*; (3) the limitation is not beyond an insured's reasonable expectations because the Policy clearly demonstrates the intent to limit coverage for Animal Liability, *id. at 8-11*; and (4) the Animal Liability endorsement is enforceable as a proper "step-down" provision, *id. at 11-12*.

Duffy argues that because Coverage L - Animal Liability does not list an associated premium amount, as it does with Coverage L - Personal Liability, nor does it list a premium credit, as it does with "Coverage B - Other Structures Exclusion," the coverage "step down"

for Animal Liability is not applicable, and American is therefore not entitled to summary judgment. *Deft's Br. (ECF 23) at 3-5.* Duffy argues that the coverage clause of the Policy "clearly requires that a premium must be stated for the coverage to apply." *Id. at 3 (citing ECF 19 at 23).* Thus, Duffy argues, the lack of a premium credit for Coverage L - Animal Liability on the declarations page: (1) creates an ambiguity that should be construed in his favor, *id. at 6*; and (2) runs afoul of an average consumer's reasonable expectations, *id. at 9.*

## III. <u>SUMMARY JUDGMENT STANDARD</u>

Fed. R. Civ. P. 56(a) requires the court to grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue as to any material fact. *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

To establish its entitlement to judgment "as a matter of law[,]" American, as the party with the burden of persuasion at trial, must establish "beyond controversy every essential element of its" claim for relief. *S. California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

## IV. **DISCUSSION**

Under Montana law,[2] interpretation of an insurance contract presents a question of law. *Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, 395 (Mont. 2008). Montana law provides that courts are to "examine insurance contracts as a whole, with no special deference to specific clauses." *Id.* A policy's language "governs if it is clear and explicit." *Marie Deonier & Assoc. v. Paul Revere Life Ins. Co.*, 9 P.3d 622, 630 (Mont. 2000). Courts are to "accord the usual meaning to the

---

[2]Because jurisdiction is based on diversity of citizenship, this Court must follow the substantive law of Montana. *Erie Ry. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

terms and the words in an insurance contract, and … construe them using common sense." *Modroo*, 191 P.3d at 395.

Here, the plain language of the Animal Liability endorsement states clearly in unambiguous terms that American "will not pay more than $10,000" for any claim against an insured that is "caused by or contributed to by any animal" owned by, or in the care or custody of, the insured. *ECF 19 at 8*. The declarations page of the Policy, found on the first page, also clearly indicates the $10,000 policy limit for applicable coverage. *Id. at 8*.

It is undisputed that Duffy was injured by the Paiges' dog. Under the Policy's clear and explicit language, Duffy is entitled to a maximum amount of $10,000 under Coverage L - Animal Liability, and $1,000 under Coverage M - Medical Payments. American, having paid these policy limits, is therefore entitled to summary judgment unless the Policy is, as Duffy asserts, ambiguous or violates an objective consumer's reasonable expectations.

### A. <u>Ambiguity</u>

"An ambiguity exists when the policy, taken as a whole, is reasonably subject to two different interpretations." *Newbury v. State Farm Fire & Cas. Ins. Co. of Bloomington, Ill.*, 184 P.3d 1021, 1025

(Mont. 2008) (citing *Mitchell v. State Farm Ins. Co.*, 68 P.3d 703, ¶ 26 (Mont. 2003)). Courts attempt to "determine whether [a] term is ambiguous by viewing the policy from the viewpoint of a consumer with average intelligence but not trained in the law or insurance business." *Montana Petroleum Tank Release Compensation Board v. Crumleys, Inc.*, 174 P.3d 948, 957 (Mont. 2008) (citation and internal quotations omitted). An "[a]mbiguity does not exist just because a claimant says so or just because the parties disagree as to the meaning of the contract provision." *Giacomelli v. Scottsdale Ins. Co.*, 221 P.3d 666, 672 (Mont. 2009) (citations and internal quotations omitted). Courts are not to "distort contractual language to create an ambiguity where none exists." *Id.* (citations omitted).

Here, the Policy is not ambiguous. The declarations page informs the insured that "THIS POLICY PROVIDES ONLY THE FOLLOWING COVERAGES FOR THIS UNIT" and proceeds to list coverages and applicable limits. An average consumer of insurance would understand that the Policy provides insurance for each listed type of coverage up to the stated limit. In this particular policy, the coverages listed include those found in Section 1, Coverages A, C, and B, which cover the dwelling, other structures, and personal property, and those found in Section 2,

Coverages L and M, covering personal liability, animal liability, and medical payments. The declarations page unambiguously notifies the average consumer that Animal Liability carries a policy limit of $10,000.

The language of the Animal Liability endorsement provides further clarity. As indicated above, this endorsement uses clear and explicit language, and notifies an average consumer that American will pay no more than $10,000 for bodily injuries caused by an insured's animal. Neither the declarations page nor the Animal Liability endorsement contains an inherent ambiguity.

Without citing pertinent supporting authority either in the law or in the insurance policy, Duffy argues that the Policy is ambiguous because the declarations page lists a premium or a premium credit for some coverages but not for others. He argues that the Policy's language requires that a premium or premium credit must be stated for a particular area of coverage to apply, and that because Coverage L - Animal Liability states no premium or premium credit, "the only reasonable and common sense interpretation" is that the special limit for Animal Liability does not apply. *ECF 23 at 7*. The Court rejects this argument.

Even applying Duffy's logic does not reveal any ambiguity. The language upon which Duffy's argument rests is found on page 20 of the Policy. *See ECF 19 at 23.* But this language appears in Section 1, and thus applies only to Coverages A, C, and B, those applicable to the dwelling, other structures, and personal property. Neither Coverage L nor Coverage M appear in Section 1 – these areas of coverage instead appear in Section 2, titled "Personal Liability" and beginning on page 28 of the Policy. *See ECF 19 at 31.* This section contains different prefatory language, providing that American will provide "the insurance described in this policy in return for the premium and compliance with all applicable provisions of this policy." *ECF 19 at 31.* Viewing the Policy as a whole, and not giving special deference to specific clauses, it would be unreasonable to read the language on page 20, found in Section 1, as creating a requirement for a stated premium for coverages in Section 2. If this were true, there would be no coverage for medical payments because neither "MEDICAL PAYMENTS EA. PERSON" nor "MEDICAL PAYMENTS EA. OCC." list a premium or premium credit. Duffy does not argue that the medical payment was made incorrectly.

The Court will not create ambiguity where none exists. *See Giacomelli*, 221 P.3d at 672. Construing the Policy as a whole from a

reasonable consumer's viewpoint, the Court finds that the Policy's declarations page and Animal Liability endorsement unambiguously limit coverage for animal-caused bodily injury to $10,000.

### B. Reasonable Expectations Doctrine

Under the reasonable expectations doctrine, "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." *Transamerica Ins. Co. v. Royle*, 656 P.2d 820, 824 (Mont. 1983). "The reasonable expectations doctrine is inapplicable where the terms of the insurance policy clearly demonstrate an intent to exclude coverage." *Newbury*, 184 P.3d at 1027. "[E]xpectations that are contrary to a clear exclusion from coverage are not objectively reasonable." *Id.*

Although doubts about coverage are to be strictly construed against the insurer, courts are not to rewrite a policy's terms, but rather to enforce the terms as written. *Generali-U.S. Branch v. Alexander*, 87 P.3d 1000, 1004 (Mont. 2004). Accordingly, "[c]ourts should not ... seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a

risk clearly excluded by the insurance contract." *Crumleys*, 174 P.3d at 957 (quoting *Mecca v. Farmers Insurance Exchange*, 122 P.3d 1190, ¶ 9 (Mont. 2005)).

Citing again to the lack of a stated premium or premium credit for Coverage L - Animal Liability, Duffy argues that the declarations page "contains no clear statement of an intent to limit the personal liability limit" of $100,000, and that the "lack of clarity of the declarations page forces the insured to read deeper into the policy to determine what insurance he or she actually purchased." *ECF 23 at 8-10*. Thus, Duffy argues, the $10,000 limit for Animal Liability is beyond the average consumer's reasonable expectations. The Court is not convinced.

As previously indicated, the declarations page puts the consumer on notice that there exists under the Policy an area of coverage for "Animal Liability Ea. Occ." that carries a policy limit of $10,000. Even assuming a consumer developed a contrary expectation, the consumer need only move from the declarations page on page 1 to the Animal Liability endorsement found on page 5. There, the Policy indicates in clear, brief, simple and straightforward language that American "will not pay more than $10,000" for bodily injury "caused by or contributed

to by any animal owned by, or in the care or custody of any 'insured.'"

This analysis does not require a "painstaking study" of the Policy to negate an expectation that the Policy would provide more than $10,000 for an animal-caused injury. In *Hamilton v. Trinity Universal Ins. Co.*, this Court rejected the argument that an exclusion was against an insured's reasonable expectations because "an insured must look to several places in the policy to determine if coverage is provided." 465 F. Supp. 2d 1060, 1067 (D. Mont. 2006). The Court instead found that "the language of the exclusion clearly omits coverage under the circumstances of this case[,]" and thus any understanding of the exclusion contrary to its clear language was unreasonable. *Id*.

Duffy does not address the language of the Animal Liability endorsement, nor does he cite any authority suggesting that the effect of the endorsement is against a consumer's reasonable expectations in this circumstance. To the contrary, the endorsement's language is sufficiently clear to render the reasonable expectations doctrine inapplicable – expectations that are contrary to such clear language are not objectively reasonable. *See Newbury*, 184 P.3d at 1027; *see also Wellcome*, 849 P.2d at 190 ("to provide coverage where the policy manifests a clear intent to do otherwise would violate our most basic

contract law and rules of interpretation").

V. **CONCLUSION**

Based on the foregoing, IT IS RECOMMENDED that American's Motion for Summary Judgment *(ECF 17)* be GRANTED, and that the Court enter judgment declaring that American has paid all applicable insurance coverage limits to Duffy under Policy Number N077 032685 0045513017 25 T60, and Duffy has no further right or interest under this Policy.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Order and Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the Order and Findings and Recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 13th day of January, 2014.

**/s/ Carolyn S. Ostby**
United States Magistrate Judge